This appeal is by John C. Jones from judgment entered on a directed verdict in *Page 977 
favor of Liberty National Life Insurance Company in Jones' action seeking additional indemnity under a Life insurance policy on account of the death of his wife allegedly resulting, directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means as evidenced by a visible wound or contusion on the exterior of the body.
The issue is whether death from cerebral anoxia and edema secondary to total airway obstruction due to aspirated vomitus as opposed to this condition resulting from food in the process of being eaten was the cause of death through external rather than internal means.
The policy under which Mrs. Jones was insured for additional indemnity provided for the payment of that additional indemnity for death resulting from accidental means in the event:
 "* * * death * * * resulted, directly and independently from all other causes, from bodily injury effected solely through external, violent and accidental means as evidenced by a visible wound or contusion on the exterior of the body * * *"
A fair summary of the evidence pertinent to this appeal establishes that decedent was found alone and dead in a motel room in a supine position with the chain lock on the inside of the door engaged. An autopsy revealed that death resulted from total obstruction of the airway (trachea) from aspirated vomitus or food matter. The matter regurgitated was gastric contents. There was no evidence that death resulted from choking on or aspiration of food as it was being eaten or ingested.
The crucial question of law under the evidence is whether death occurring in the manner shown by the evidence resulted from external means. If not, then whether it was accidental, violent, and evidenced by a visible wound or contusion on the exterior of body is immaterial. O'Bar v. Southern Life HealthIns. Co., 232 Ala. 459, 168 So. 580 (1936). The precise question of law posed by the facts in this case has not been considered by the appellate courts of Alabama so far as we can determine.
Where, as here, the language of the restrictive coverage is clear and unambiguous the rule of construction that favors the insured has no application and the policy will be enforced according to its terms as written. Green v. Merrill, 293 Ala. 628, 308 So.2d 702 (1975).
Undisputed medical evidence established the following:
 "Q. Now, in your report, sir, you said that the examination of her stomach, you compared the contents of her stomach and the contents of the material that was blocking the trachea and that they seemed identical.
"A. Correct.
"Q. So I am asking you, does that mean that the
 contents that were in the trachea came from the stomach?
"A. That is my assumption.
"Q. So it was going out instead of coming in?
 "A. Yes. This is why I felt reasonably confident in making the statement that this was vomitus aspirated rather than aspirated food. If I thought she had aspirated food that had been accidentally sucked into the airway during the process of eating, then I would have said `food accidentally aspirated during eating,' or something like that.
* * * * * *
 "A. The thing that differentiates between gastric contents and food is that in the stomach there is a great deal of mucus and mucin that is produced, mixed with the food; and it goes on through the digestive absorptive process the food in the process of being chewed at the mouth only has saliva mixed with it. Saliva is usually very watery and has very little mucus with it. This did have a great deal of mucus and was similar in every respect to the material in the stomach.
 "The presence of mucus, the greenish fluid, is due to bile. Bile is refluxed into the stomach to assist in solution of fat material prior to absorption, so this *Page 978 
accounts for the greenish color that was present in both. And also the fact that it was green indicates that you have had bile come down from the gall bladder down into the duodenum back into the stomach, and it has had to come all the way up. There is no other way for bile to get into the trachea except to be carried up through with the gastric contents, which further establishes the nature of the material as vomitus rather than incompletely chewed food, in which case it would not be a green color."
The better reasoned authorities from other jurisdictions conclude that death results from external means if the result obtained from ingestion and from internal means if it results from regurgitation: food in the process of being swallowed distinguished from regurgitated matter that had been in the digestive tract.
For example, in Strowmatt v. Volunteer State Life InsuranceCo., 176 So.2d 563 (Fla.App. 1965), a Florida District Court of Appeals, in holding death caused by asphyxiation due to aspirated vomitus in the trachea was not effected through external means, said:
 "The decision in this case depends on an interpretation of the words `external means.' It is recognized that death caused by choking on food in an attempt to swallow same which accidentally passes into the lungs is the result of external, violent and accidental means. However, aspirated vomitus matter is not food. It may have been food at one time, but having entered the stomach it is so changed that it can no longer be classified in that category. The substance which caused the asphyxiation was inside the body and on the way out during the vomiting process, and therefore did not constitute `external means' of death of the deceased."
Similarly, a California Court of Appeals in Spott v.Equitable Life Insurance Co., 209 Cal.App.2d 229, 25 Cal.Rptr. 782
(1962), denying recovery for additional indemnity under a life insurance policy because of its conclusion the insured's death from asphyxiation due to bronchial aspiration of regurgitated gastric contents was not effected by external means, commented:
 "A different result might well be reached had food, in the process of being swallowed, lodged in the glottis and caused strangulation. There it could be argued that the food was an external element, still in the course of entry into the body. Here, however, the regurgitated material had been in the digestive tract for some time. In the digestive process, it had lost its identity as either solid or liquid food. It had become `internal' quite as much as substances, far earlier consumed, which had been transmuted by bodily process into flesh or bone."
Finally, in McCallum v. Mutual Life Insurance Co. of NewYork, 175 F. Supp. 3 (D.C.Va. 1959), the district court, holding an insured's death as a result of aspiration of gastric contents into the trachea was not from an external means, reasoned:
 "The ultimate question is the distinction, if any, between choking on food as it is being ingested, and choking on food reduced to matter as it is regurgitated from the stomach.
* * * * * *
 "* * * The substance, as contained within the stomach, was inside the body and on its way outside during the vomiting process. This, in no sense, constitutes an `external means.'"
For a discussion of this question see 98 A.L.R.2d 318.
We hold, as a matter of law under the evidence in this case, the death of Mrs. Jones resulted from internal means and the trial court, therefore, did not err in directing a verdict for defendant Liberty National Life Insurance Company.
AFFIRMED.
BLOODWORTH, FAULKNER, ALMON and BEATTY, JJ., concur. *Page 979